# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JUAN ORTEGA JIMENEZ,<br><br>     Petitioner,<br><br>v.<br><br>WARDEN, FCI ATLANTA, in their official capacity; ROMAN CHABAN, in his official capacity as Acting Deputy Director of Executive Office of Immigration Review; KRISTI NOEM, in her official capacity as Secretary of Department of Homeland Security; TODD LYONS in his official capacity as Acting Director of Immigration and Customs Enforcement; GEORGE STERLING in his official capacity as Deputy Field Office Director of the Atlanta Field Office, Immigration and Customs Enforcement.<br><br>     Respondents. | Civil Action No.: 1:25-cv-05650-SDG-LRS<br><br>**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION** |

Habeas petitioner Juan Ortega Jimenez ("Plaintiff") respectfully submits this memorandum of law in support of his Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction. Respondents-Defendants ("Defendants") detain Plaintiff under an erroneous reading of 8 U.S.C. § 1225(b)(2) and improperly subject him to mandatory detention without possibility of bond. Defendants' actions amount to a grave deprivation of Plaintiff's fundamental liberty interests. Plaintiff is

elderly and continues to suffer each day he is imprisoned. To prevent further irreparable harm, the Court should grant Plaintiff's emergency motion, enjoin Defendants from imposing mandatory detention on Plaintiff, and order his immediate release on $5,000 bond, consistent with the Immigration Court's findings on custody redetermination. *See* Habeas Pet., Exhibit B.

## I.    INTRODUCTION

For nearly three decades, Defendants applied 8 U.S.C. § 1226's discretionary detention framework to noncitizens who entered without inspection and were later detained for removal proceedings. Defendants' abruptly reverse their well-settled understanding and practice under Section 1226(a). This reversal violates the plain text of the statute. Section 1226(a) authorizes release on bond for noncitizens "arrested and detained" during removal proceedings, absent enumerated criminal charges. 8 U.S.C. § 1226(a)(2), (c). The Supreme Court explained that Section 1226 is the "default" provision for detaining people "already in the country," explicitly distinguishing them from noncitizens "seeking admission into the country" who face mandatory detention under Section 1225. *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

Defendants now claim that Plaintiff—a 34-year U.S. resident apprehended in the interior—is "seeking admission" and subject to mandatory detention under Section 1225(b)(2). This contradicts both longstanding interpretation of Sections

1225 and 1226, as well as decades of agency practice limiting Section 1225 to encounters "at the Nation's borders and ports of entry." *Jennings*, 583 U.S. at 287. The overwhelming majority of federal courts have rejected Defendants' interpretation. *See, e.g.*, *Arce v. Trump*, No. 8:25CV520, 2025 U.S. Dist. LEXIS 183049, at *8 n.3 (D. Neb. Sep. 18, 2025) (collecting cases); *but see Pena v. Hyde*, No. 25-CV-11983-NMG, 2025 U.S. Dist. LEXIS 144234, at *2 (D. Mass. July 28, 2025) (Sections 1225 and 1226 distinction not addressed).

Plaintiff is an elderly man who suffers each day he is unlawfully detained in violation of his constitutional and statutory rights. This Court should grant a temporary restraining order enjoining Defendants from applying mandatory detention to Plaintiff and order Plaintiff's immediate release on $5,000 bond. The Court should bar Defendants from moving Plaintiff out of this District to preserve the Court's habeas jurisdiction.

## II.    BACKGROUND

### A. Factual Background

Plaintiff is a 65-year-old Mexican national who has lived in the United States for 34 years—since 1991. Habeas Pet. ¶¶ 1, 49. He built a life in the United States in Carrollton, Georgia with his wife, where he worked steadily and helped raise his U.S. citizen grandson. *Id*. ¶ 49. His only brush with the law was a 2011 misdemeanor conviction for driving without a license. *Id*.

On August 18, 2025, U.S. Immigration Custom and Enforcement ("ICE") agents conducting surveillance on an unrelated target spotted Plaintiff leaving a business in Carrollton and arrested him instead. *Id*. ¶ 50, Ex. A. ICE's own records confirm Plaintiff's continuous U.S. residence since his entry without inspection. *See id*. ¶ 51. Defendants placed Plaintiff in standard removal proceedings under 8 U.S.C. § 1229a—not expedited removal. *Id*.

Plaintiff sought a bond hearing. *Id*. ¶ 52. At the first hearing on September 5, 2025, ICE represented that Board of Immigration Appeals (BIA) precedential decision *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), might not apply if Plaintiff could prove he entered before Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). *Id*. ¶ 52. Counsel withdrew the bond request to gather documentation. *Id*. With proof of Plaintiff's pre-IIRIRA entry and evidence that he was neither dangerous nor a flight risk, counsel returned to for a second bond hearing on September 18, 2025. *Id*. ¶ 53. ICE reversed course, claiming *Matter of Yajure Hurtado* stripped the Immigration Judge ("IJ") of jurisdiction regardless of when Plaintiff entered. *Id*. ¶ 53. The IJ agreed, denying bond solely on jurisdictional grounds. *Id*. ¶ 54, Ex. B.

But the IJ went further. *See id*. After hearing a full hearing, the Immigration Court found that if jurisdiction existed, "a $5,000 bond would be appropriate and reasonable to ensure that [Plaintiff] will appear for his future immigration court

hearings." *Id*. This conditional finding establishes two critical facts: Plaintiff proved he is neither a flight risk nor a danger to the community, and but for the Defendants' erroneous statutory interpretation, he would be released. *See id*. ¶¶ 54-55.

Instead, Plaintiff remains detained. At 65 years old with a chronic medical condition requiring ongoing management, his health deteriorates in custody. *Id*. ¶ 58. The psychological toll has been severe enough that he has been prescribed medication while in detention. *Id*. Meanwhile, Plaintiff remains separated from his family and community—including the grandson he helped raise. *Id*.

### B. Legal Background

This case concerns two provisions of the INA: 8 U.S.C. §§ 1226(a) and 1225(b). The distinction between them determines whether a noncitizen can be released on bond or is subject to mandatory detention. Detention under Section 1226(a) is discretionary. *See* 8 U.S.C. § 1226(a)(1). Noncitizens subject to discretionary detention can seek a "custody redetermination," commonly referred to as a bond hearing, before an IJ to present evidence that they are neither a flight risk nor a danger to the community. 8 C.F.R. § 1236.1(d)(1). By contrast, people detained under Section 1225(b) are subject to mandatory detention. 8 U.S.C. § 1225(b)(2)(A) (mandating that "the alien shall be detained for a proceeding under section 1229a of this title.")

These two provisions reflect the detention framework's distinction between noncitizens arrested *after entering* the country (§ 1226) and those arrested *while arriving in* the country (§ 1225). Prior to 1996 IIRIRA, the statutory authority for custody was 8 U.S.C. § 1252(a) (1994), authorizing detention during "deportation" proceedings and release on bond. Those "deportation" proceedings governed the detention of anyone in the United States, regardless of manner of entry. 8 U.S.C. § 1252(a)(1) (1994). Congress expressly stated that the new Section 1226(a) enacted in IIRIRA "restates the current provisions in [the predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond" a noncitizen "who is not lawfully in the United States." H.R. Rep. No. 104-469, pt. 1, at 229, *see also* H.R. Rep. No. 104-828, at 210. The IIRIRA also enacted new mandatory detention (without bond) provisions for people apprehended on arrival at 8 U.S.C. § 1225.

In implementing the IIRIRA's detention authority, U.S Department of Homeland Security's predecessor agency clarified that people entering the United States without inspection and who were *not* apprehended while "arriving" would continue to be detained under Section 1226(a) (formerly Section 1252(a)) with access to bond. Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed.

Reg. 10312, 10323 (Mar. 6, 1997) ("Inadmissible aliens, except for arriving aliens, have available to them bond … This procedure maintains the status quo.").

Following IIRIRA's passage, Defendants applied Section 1226(a) to people arrested in the interior after entry without inspection. *Id.* ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Defendants' contemporaneous guidance on the detention authority applicable to noncitizens present without admission or parole persisted for nearly three decades. *See Reyes v. Raycraft*, No. 25-cv-12546, 2025 U.S. Dist. LEXIS 175767, at *22 (E.D. Mich. Sep. 9, 2025).

Defendants reversed course and now insist that Section 1225(b)(2)(A) requires detention of *all* persons who entered the United States without inspection, regardless of where they were arrested or how long they have resided in the country. Habeas Pet. ¶ 45. On September 3, 2025, the BIA issued *Matter of Yajure Hurtado*, a precedential decision holding that any noncitizen present in the United States without having been inspected and admitted is subject to mandatory detention under Section 1225(b)(2)(A). *Id.* ¶ 46. *Matter of Yajure Hurtado* strips Immigration Courts' authority to hear bond requests or grant bond for noncitizens who have lived in the United States for years. *Id.*, *see* 29 I&N Dec. at 216, 229. Nearly every federal district court to consider Defendants' interpretation has rejected it as inconsistent

with the statutory detention scheme and Defendants' historical application of the

detention statutes.[1]

---

[1] *Rodriguez Vazquez v. Bostock*, No. 779 F.Supp.3d 1239 (W.D. Wash. 2025); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, *8 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp.3d ---, 2025 WL 2084238, *9 (D. Mass. July 24, 2025); *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01874-SSS-BFM, *13 (C.D. Cal. July 28, 2025); *Escalante v. Bondi*, No. 25-cv-3051, 2025 WL 2212104 (D. Minn. July 31, 2025) (adopted *sub nom O.E. v. Bondi*, 2025 WL 2235056 (D. Minn. Aug. 4, 2025)); *Lopez Benitez v. Francis*, No. 25-Civ-5937, 2025 WL 2267803 (S.D. N.Y. Aug. 8, 2025); *de Rocha Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025) (adopted without objection at 2025 WL 2349133 (D. Ariz. Aug. 13, 2025)); *Dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Aquilar Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW, 2025 WL 2379285 (C.D. Cal. Aug 15, 2025); *Romero v. Hyde*, --- F.Supp.3d ----, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, Doc. 20 (D. Md. Aug. 24, 2025); *Benitez v. Noem*, No. 5:25-cv-02190, Doc. 11 (C.D. Cal. Aug. 26, 2025); *Kostak v. Trump*, No. 3:25-dcv-01093-JE, Doc. 20 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, --- F.Supp.3d ---, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); *Lopez-Campos v. Raycraft*, --- F.Supp.3d --- , 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Palma Perez v. Berg*, --- F.Supp.3d --- , 2025 WL 2531566 (D. Neb. Sept. 3, 2025); *Cortes Fernandez v. Lyons*, No. 8:25-cv-506, 2025 WL 2531539 (D. Neb. Sept. 3, 2025); *Carmona-Lorenzo v. Trump*, No. 4:25-cv-3172, 2025 WL 2531521 (D. Neb. Sept. 3, 2025); *Hernandez Nieves v. Kaiser*, No. 25-cv-06921-LB, 2025 WL 2533110 (N.D. Cal Sept 3, 2025); *Vasquez Garcia et al. v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Doe v. Moniz*, No. 1:25-cv-12094-IT, 2025 WL 2576819 (D. Mass. Sept. 5, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-cv-02304, 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Sampiao v. Hyde*, --- F.Supp.3d ---, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *Pizzaro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Cuevas Guzman v. Andrews*, No. 1:25-cv-01015-KES-SKO (HC), 2025 WL 2617256, (E.D. Cal. Sept. 9, 2025); *Hinestroza v. Kaiser*, No. 25-cv-07559-JD, 2025 WL 2606983 (N.D. Cal. Sept. 9, 2025); *Jimenez v. FCI Berlin, Warden*, --- F.Supp.3d ---, 2025 WL 2639390 (D.N.H. Sept. 9, 2025); *Salcedo Aceros v. Kaiser*, No 25-cv-06924-EMC (EMC), 2025 WL 2637503 (N.D. Ca. Sept. 12, 2025). *Garcia Cortes v. Noem*, No. 1:25-cv-02677-CNS, 2025 WL 2652880 (D. of Colo. Sept. 16, 2025); *Salazar v. Dedos*, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); *Maldonado-Vazquez v. Freeley*, 2025 WL 2676082 (D. Nev. Sept 17, 2025); *Hassan v. Crawford*, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Beltran-Barrera v. Tindall*, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Campos-Leon v. Forestal*, 2025 WL 2694763 (S.D. Ind. Sept 22, 2025); *Chafla v. Scott*, 2:25-cv-00437-SDN, 2025 WL 2688541 (D. of Maine Sept. 21, 2025).

## III.   LEGAL STANDARD

"The elements for both a TRO and preliminary injunction are the same." *Woodyard v. Baldwin Cty. Sheriff's Dep't*, No. 1:24-cv-210-TFM-N, 2024 U.S. Dist. LEXIS 120385, at *3 (S.D. Ala. July 9, 2024). This Court can grant a preliminary injunction upon a showing that:

> (1) [Plaintiff] has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1247 (11th Cir. 2016) (citations omitted). As an extraordinary and drastic remedy, Plaintiff has the burden to establish each element. *Id*. Plaintiff does so here.

## IV.   ARGUMENT

### A. Mr. Ortega Jimenez is Likely to Succeed on the Merits

Defendants' policy violates the INA. As the Supreme Court explained, § 1225 is concerned "primarily [with those] seeking entry," meaning cases "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 297 & 287. In contrast, Section 1226 applies to people who, like Plaintiff, are "already in the country" and are detained "pending the outcome of removal proceedings." *Id*. at 289. The INA's plain text, canons of statutory construction, the statutes' legislative

history, the implementing regulations, and decades of agency practice all support this conclusion. The federal courts agree. *See* cases cited *supra* n.1.

1. *Under canons of statutory interpretation, Plaintiff is entitled to a bond hearing*

Application of Section 1226(a) does not turn on whether a person was previously admitted to the country. The plain text of 8 U.S.C. § 1226(a) includes people who entered the United States without inspection. 8 U.S.C. § 1226(c)(1)(A), (D), (E). Section 1226(a), the INA's "default" detention authority, *Jennings*, 583 U.S. at 281, applies to people detained "pending a decision on whether the [noncitizen] is to be removed," 8 U.S.C. § 1226(a). As the statute provides, this language includes both: (1) people like Plaintiff who entered without inspection, were never formally admitted to the country, and thus are charged as "inadmissible" under Section 1182(a)(6)(A)(i), and (2) people who were admitted and are charged as "deportable." *See id*. § 1229a(a)(3) (removal proceedings "determine[e] whether a [noncitizen] may be admitted to the [U.S.] or, if the [noncitizen] has been so admitted, removed from the [U.S.]") (emphasis added).

The statute's structure makes this clear. Subsection 1226(a) provides the right to bond. Subsection 1226(c) then carves out discrete categories of noncitizens subject to mandatory detention due to criminal acts. *See*, *e.g.*, 8 U.S.C. § 1226(c)(1)(A), (D), (E). These carve-outs include noncitizens inadmissible for entering without inspection *and* who meet certain other crime-related criteria. *See*

*id*. § 1226(c)(1)(E). Because Section 1226(c)'s exception expressly applies to people who entered without inspection, it reinforces the default rule: Section 1226(a)'s general detention authority otherwise applies to people such as Plaintiff. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010). Recent statutory amendments do the same.

Congress made significant changes to Section 1226 in January of this year. *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025) ("LRA"). These amendments specify that people charged under Section 1182(a)(6)(A)(i) for entering without inspection or (a)(7) for lacking valid documentation *and* who have had certain criminal encounters are subject to mandatory detention under Section 1226(c). 8 U.S.C. § 1226(c)(1)(E). By including such individuals under Section 1226(c), Congress expressly reaffirmed that discretionary detention under Section 1226(a) covers persons charged under Section 1182(a)(6)(A) or (a)(7). "[W]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." *Rodriguez Vazquez*, 779 F.Supp.3d at 1256-57 (quoting *Shady Grove*, 559 U.S. at 400). *See also Gomes*, 2025 WL 1869299, *6; *Diaz Martinez*, 2025 WL 2084238, *7.

Several principles of interpretation reinforce this understanding. First, is the canon against rendering statutory language meaningless. *See*, *e.g.*, *Clark v. Rameker*, 573 U.S. 122, 131 (2014) ("a statute should be construed so that effect is given to all

its provisions, so that no part will be inoperative or superfluous") (internal citations omitted). Defendants' position does just that. As the *Rodriguez Vazquez* court explained, this is so because if "Section 1225 … and its mandatory detention provisions apply to all noncitizens who have not been admitted, then it would render superfluous provisions of Section 1226 that apply to certain categories of inadmissible noncitizens." *Rodriguez Vazquez*, 779 F.Supp.3d at 1258 (citation modified).

Second, "when Congress amends legislation, courts must presume it intends the change to have real and substantial effect." *PRN Real Est. & Invs., Ltd. v. Cole*, 85 F.4th 1324, 1350 (11th Cir. 2023) (cleaned up). That presumption applies here, given LRA's amendments to Section 1226. *See Rodriguez Vazquez*, 779 F.Supp.3d at 1259 (quoting *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995)). LRA's amendments explicitly provide that Section 1226(a) covers people like Plaintiff. This is because the "specific exceptions [in the LRA] for inadmissible noncitizens who are arrested, charged with, or convicted of the enumerated crimes logically leaves those inadmissible noncitizens *not* criminally implicated under Section 1226(a)'s default rule for discretionary detention." *Rodriguez Vazquez*, 779 F.Supp.3d at 1259 (emphasis in original). *See also*, *e.g.*, *Diaz Martinez*, 2025 WL 2084238, at *7 ("if, as the Government argue[s], … a non-citizen's inadmissibility were alone already

sufficient to mandate detention under section 1225(b)(2)(A), then the 2025 [LRA] amendment would have no effect").

And last, "[w]hen Congress adopts a new law against the backdrop of a longstanding administrative construction," courts "generally presume[] the new provision should have been understood to work in harmony with what has come before." *Monsalvo Velazquez v. Bondi*, 145 S. Ct. 1232, 1242 (2025). Applicable here, the LRA supports Plaintiff's position because "Congress adopted the new amendments to Section 1226(c) against the backdrop of decades of post-IIRIRA agency practice applying discretionary detention under Section 1226(a) to inadmissible noncitizens such as [Plaintiffs]." *Rodriguez Vazquez*, 779 F.Supp.3d, at 1259.

2. *Section 1226(a) applies to Plaintiff's detention, not Section 1225(b)(2)*

Section 1225's structure also supports Plaintiff's position that discretionary detention under 1226(a) applies to him. "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (citations omitted); *see also Biden v. Tex.*, 597 U.S. 785, 799-800 (2022) (interpreting INA).

Although the Supreme Court has not decided the issue before this Court, its discussion of the structure of Sections 1226 and 1225 as distinguishing between the

two basic groups of noncitizens is instructive. Section 1226(a) applies to those who are "already in the country" and are detained "pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. By contrast, Section 1225(b)(2) mandatory detention applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Id*. at 287. The whole purpose of Section 1225 is to define *how* DHS inspects, processes, and detains people at the border. *See id*. at 297 ("[Section] 1225(b) applies primarily to [noncitizens] seeking entry into the [U.S.] …"). *See also* H.R. Rep. No. 104-469, pt. 1, at 157-58, 228-29 (explaining the purpose of § 1225).

Section 1225's text reinforces the two sections' structure and reflects its limited temporal scope. To begin, Section 1225 concerns the "inspection" and "expedited removal of inadmissible arriving aliens." 8 U.S.C. § 1225. For example, § 1225(b)(1) encompasses only "inspection" of certain "arriving" noncitizens, and only those who are "inadmissible" for having misrepresented information or lacking entry documents. Section 1225(b)(2) applies specifically to individuals seeking admission upon arrival who are not addressed under subsection (b)(1). The subsection is titled "Inspection of other aliens" and further specifies it applies only to "applicants for admission" (defined at § 1225(a)(1)) who "*seek[] admission*.") By stating § 1225(b)(2) applies only to those "seeking admission," Congress confirmed

it did not intend to sweep up those who previously entered and began residing in the United States. Until recently, even Defendants took this very position.

"This active construction of the phrase 'seeking admission'" accords with the plain language in § 1225(b)(2)(A) by requiring that a person be an "applicant for admission" and "also [be] *doing* something" to obtain authorized entry. *Diaz Martinez*, 2025 WL 2084238, at **6-7 (emphasis in original); *see also Lopez Benitez*, 2025 WL 2267803, at *7 (this is the "plain, ordinary meaning" of "seeking admission"). The statute's temporal focus on people "arriving" is evident in other respects as well. Section 1225(b)(2)(C) addresses "[t]reatment of aliens *arriving* from contiguous territory" (emphases added). Section 1225's focus is on people entering the U.S.

Defendants' reading of Section 1225 would also render significant portions of the statute meaningless. Several requirements must be met for Section 1225(b)(2)'s mandatory detention regime to apply; namely, (1) an "examining immigration officer" (2) must conclude during an "inspection" (3) of an "applicant for admission" (4) who is also "seeking admission" (5) that the person "is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Defendants' interpretation of Section 1225 reads out three of those five requirements.

First, it makes meaningless the requirements that the "examining immigration officer" conduct an "inspection." *Jimenez*, 2025 WL 2639390 at *7. "[E]xamination

is not an unbound concept. Rather, it is the specific legal process one undergoes while trying to enter the country." *Id.* (citations omitted). The regulations establish the same. 8 C.F.R. § 235.1(a) (noting that "scope of examination" occurs while on seeks to "enter the United States" "at a U.S. port-of-entry . . ."). Nor is the inspection requirement untethered to entry to the United States. *See* 8 U.S.C. § 1225(a)(3) ("All [noncitizens] who are applicants for admission or otherwise seeking admission or readmission *to or transit through the United States* shall be *inspected* by immigration officers") (emphasis added). Defendants' interpretation renders both the examination officer and inspection requirements superfluous.

Second, it renders superfluous Section 1225(b)(2)(A)'s requirement that the noncitizen be "seeking admission." *Jimenez*, 2025 WL 2639390, at *8. The statute defines admission to mean "the *lawful entry* of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). "While an applicant for admission has not been 'admitted' to the United States, it does not follow that an applicant for admission continues to be actively seeking . . . lawful entry." *Jimenez*, 2025 WL 2639390, at *8 (citation omitted). "If as the Government argues, all applicants for admission are deemed to be 'seeking admission' for as long as they remain applicants, then the phrase 'seeking admission' would add nothing to the provision" in Section 1225(b)(2)(A). *Salcedo Aceros*, 2025 WL 2637503, at *10. Defendants' position would similarly

"read the word 'entry' out of the definitions of 'admitted' and 'admission.'" *Chafla*, 2025 WL 2688541, at \*6.

The implementing regulation for Section 1225(b) supports Plaintiff's reading, noting that §1225(b) applies to "any *arriving* alien who appears to the inspection officer to be inadmissible." 8 C.F.R. § 235.3 (emphasis added). "The regulation thus contemplates that 'applicants *seeking admission*' are a subset of applicants 'roughly interchangeable' with "arriving aliens." *Salcedo Aceros*, 2025 WL 2637503, at \*10 (quoting *Martinez*, 2025 WL 2084238, at \*6); *See* 8 C.F.R. § 1.2 (defining an arriving noncitizen as an applicant for admission "coming or attempting to come into the United States at a port-of-entry").

Although Plaintiff is not lawfully admitted to the United States, he is no longer "seeking admission, i.e., seeking lawful entry . . . into the United States after inspection and authorization by an immigration officer." *Jimenez*, 2025 WL 2639390, \*8. Accordingly, Defendants' reading of Section 1225 to impose mandatory detention on Plaintiff without a bond hearing is incorrect.

3. *Legislative history further supports that Plaintiff is subject to discretionary detention*

IIRIRA's legislative history also supports the conclusion that Section 1226(a) applies to Plaintiff. In the IIRIRA, Congress focused on recent arrivals who lacked documents to remain. *See* H.R. Rep. No. 104-469, pt. 1, at 157-58, 228-29. Notably,

Congress said nothing about subjecting all people present in the U.S. to mandatory detention.

Before the IIRIRA, people like Plaintiff were not subject to mandatory detention under *any* theory. *See* 8 U.S.C. § 1252(a) (1994). Had Congress intended a monumental shift in immigration law, it would have clearly said so. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (finding "implausible that Congress would give to the [agency] through these modest words [such] power"). In fact, Congress indicated the opposite: the new Section 1226(a) just "restates the current provisions … regarding the authority … to arrest, detain, and release on bond a[] [noncitizen]." H.R. Rep. No. 104-469, pt. 1, at 229.

"Because noncitizens like [Plaintiff] were entitled to discretionary detention under [Section] 1226(a)'s predecessor statute and Congress declared its scope unchanged … this background supports [Plaintiff's] position that he too is subject to discretionary detention." *Rodriguez Vazquez*, 779 F.Supp.3d at 1260.

4. *Defendants' Policies violate longstanding regulations and practice*

Defendants' current position violates the Executive Office of Immigration Review's regulations. Following the IIRIRA, EOIR explained that "[d]espite being applicants for admission, aliens who are present without having been admitted … will be eligible for bond." 62 Fed. Reg. at 10323. In the following decades, the relevant regulations remain unchanged. *Compare* 63 Fed. Reg. 27441, 27448 (May

19, 1998), *with* 8 C.F.R. § 1003.19(h)(2). The regulation governing IJs' bond jurisdiction still only limits an IJ's bond jurisdiction with respect to noncitizens subject to Section 1226(c). 8 C.F.R. § 1003.19(h)(2). Regulatory "guidance and the agency's subsequent years of unchanged practice is persuasive." *Rodriguez Vazquez*, 779 F.Supp.3d at 1261. Although the Court is not bound by Defendants' interpretation here, longstanding agency practice can inform the Court's determination on the proper construction of the law. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024).

### B. Mr. Ortega Jimenez Suffers Irreparable Harm from Unlawful Detention

Defendants incarcerate Plaintiff in prison-like conditions.[2] "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Marquez-Diaz v. Ripa*, No. 25-cv-23256-ALTMAN, 2025 U.S. Dist. LEXIS 139787, at *5 (S.D. Fla. July 22, 2025) (cleaned up) (citation omitted). "The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness." *Barker v.*

---

[2] FCI, Atlanta is a federal correctional institution not meaningfully different than prison. Habeas Pet. ¶ 57; *see also Clue v. Greenwalt*, No. 5:21-cv-80, 2022 U.S. Dist. LEXIS 221848, at *16 (S.D. Ga. Oct. 24, 2022) (finding immigration detention not meaningfully different than prison setting where detention center was a *former* prison and restricted movement and permitted clothing were similar to criminal imprisonment) (emphasis added), *Dorley v. Normand*, No. 5:22-cv-62, 2023 U.S. Dist. LEXIS 93091, at *15 (S.D. Ga. Apr. 3, 2023) (same, finding no contact visits, limited recreation, inadequate health services, and razor wire fences similar to prison).

*Wingo*, 407 U.S. 514, 532–33 (1972). "It is hard to adequately state the significance of the potential injury" to a person who is illegally incarcerated, as one cannot "be given back" any day "he has spent in prison." *Case v. Hatch*, No. 08-CV-00542 MV/WDS, 2011 WL 13285731, *5 (D.N.M. May 2, 2011). Nor can such an injury "be undone through monetary remedies." *Marquez-Diaz*, 2025 U.S. Dist. LEXIS 139787, at *5 (internal quotations and citation omitted). Detention causes "potentially irreparable harm every day [one] remains in custody." *Rodriguez Vazquez*, 779 F.Supp.3d at 1262.

Plaintiff has been detained and subject to mandatory detention since August 18, 2025, solely based on Defendants' improper construction of Section 1225(b)(2). Plaintiff is elderly with a chronic medical condition requiring ongoing management and his health deteriorates in custody. Habeas Pet. ¶ 58. Plaintiff has experienced psychological distress as a result of his detention and separation from his family and community. Given that an IJ already determined that if the Immigration Court had jurisdiction, Plaintiff's release on $5,000 bond would be appropriate, the deprivation of Plaintiff's fundamental rights is significant and compelling.

## C. The Balance of Equities and Public Interest Tip Heavily in Mr. Ortega Jimenez's Favor

The balance of equities and the public interest factors merge in cases against the government. *See*, *e.g.*, *Nken v. Holder*, 556 U.S. 418, 436 (2009). The government cannot claim injury from an order enjoining unlawful action. *See*, *e.g.*,

*Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). "[I]t is clear that it would not be equitable or in the public's interest to allow the [government] to violate the requirements of federal law." *Alpha Phi Alpha Faternity v. Raffensperger*, 700 F. Supp. 3d 1136, 1375 (N.D. Ga. 2023) (citation and internal quotations omitted), *Wages & White Lion, Inv., L.L.C. v. FDA*, 16 F.4th 1130, 1143 (5th Cir. 2021) ("There is generally no public interest in … unlawful agency action").

Here, requiring Defendants to comply with the law does not injure the government and weighs in public interest. [3] The public maintains an interest in ensuring the Constitution is followed and that government actions comply with the law. Moreover, there is no governmental or public interest in keeping Plaintiff detained. To the extent that Defendants are concerned about Plaintiff's appearance at future removal proceedings, the IJ already determined that Plaintiff's release on bond would be appropriate to ensure his future appearance. Requiring Plaintiff to undergo a third bond hearing would serve no legitimate purpose. An IJ will only release someone on bond after it is established that they are not a flight risk. 8 C.F.R. § 1236.1(c)(8). Thus, "[t]he harm to the government is minimal." *Rodriguez Vazquez*, 779 F.Supp.3d at 1262.

---

[3] Likewise, the Court should exercise its broad discretion and not require a bond under Federal Rule of Civil Procedure 65. *Transcon. Gas Pipe Line Co. v. 6.04 Acres*, 910 F.3d 1130, 1171 (11th Cir. 2018) (noting that courts can exercise wide discretion and "elect to require no security at all.") Granting Plaintiff's request will not cause Defendants harm, monetary or otherwise, therefore the security bond may be waived. *Mama Bears of Forsyth Cty. v. McCall*, 642 F. Supp. 3d 1338, 1360 (N.D. Ga. 2022).

## V.    CONCLUSION

For the foregoing reasons, the Court should grant a temporary restraining order enjoining Defendants from imposing Section 1225 mandatory detention on Plaintiff and a preliminary injunction ordering his immediate release from detention on $5,000 bond. The Court should further enjoin Defendants from transferring Plaintiff outside of the Court's jurisdiction during the pendency of this proceeding.

Date: October 2, 2025                    Respectfully Submitted,

/s/ *Alexis Ruiz*
Alexis Ruiz (GA 419757)
Ruiz Immigration Law
1995 North Park Place, SE, Ste. 360
Atlanta, GA 30339
Email: aruiz@ruizimmigrationlaw.com
Phone: (770) 769-5822

/s/ *Alexa S. White*
Alexa S. White (*Pro hac vice forthcoming*)
Millicent Law Group, LLC
2451 Crystal Drive, Suite 600
Arlington, VA 22204
Email: alexa@millicentlaw.com
Phone: (202) 948-7948

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO LR. 7.1(D)

I, Alexis Ruiz, certify that this Memorandum of Law has been prepared in Times New Roman with 14-point font, in compliance with LR 5.1(B).

Date: October 2, 2025

/s/ *Alexis Ruiz*
Alexis Ruiz (GA 419757)
aruiz@ruizimmigrationlaw.com