# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JUAN ORTEGA JIMENEZ,<br>    Petitioner,<br><br>    v.<br><br>WARDEN, FCI ATLANTA, *in their official capacity*; ROMAN CHABAN, *in his official capacity as Acting Deputy Director of Executive Office of Immigration Review*; KRISTI NOEM, *in her official capacity as Secretary of Department of Homeland Security*; TODD LYONS, *in his official capacity as Acting Director of Immigration and Customs Enforcement*; GEORGE STERLING, *in his official capacity as Deputy Field Office Director of the Atlanta Field Office, Immigration and Customs Enforcement*,<br>    Respondents. | Civil Action No.<br>1:25-cv-05650-SDG-LRS |

## OPINION AND ORDER

Petitioner Juan Ortega Jimenez seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] He asserts, among other things, that he is being detained by Respondents in violation of the Due Process Clause of the Fifth Amendment because they have unlawfully refused to release him on bond as permitted under 8 U.S.C. § 1226(a). Ortega Jimenez seeks emergency injunctive relief in the form of an order from this Court directing that he be released from custody on payment of a $5,000 bond and that Respondents be barred from transferring him out of the

---

[1] ECF 1.

1

jurisdiction.[2] Respondents argue that the Court lacks jurisdiction to hear Ortega Jimenez's claims. Alternatively, they assert that he is subject to mandatory detention under 8 U.S.C. § 1225 and not entitled to bond.[3]

I.   **Factual Allegations**

Ortega Jimenez, a 65-year old Mexican national, was arrested by Immigration and Customs Enforcement (ICE) agents on August 18, 2025, and has been held in custody ever since.[4] He initially entered the United States in 1991 without inspection, and lives in Carrollton, Georgia.[5] On September 18, 2025, an immigration judge (IJ) denied Ortega Jimenez bond, concluding that the court lacked jurisdiction based on a Board of Immigration Appeals (BIA) decision, *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA Sept. 3, 2025).[6] The IJ further

---

[2]   ECF 8. When he filed his habeas petition, Ortega Jimenez was being held in FCI-Atlanta, but Respondents reportedly transferred him to a facility in Folkston, Georgia the next day. ECF 1, ¶¶ 1, 9, 57; ECF 21, at 15. Accordingly, his request for an order preventing his transfer is moot. The Court, however, retains jurisdiction over his petition. *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after [ ]he properly files a petition naming [his] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."). Respondents do not dispute that the Court retains jurisdiction. ECF 18, at 3.

[3]   ECF 18.

[4]   ECF 1, ¶¶ 20, 50.

[5]   *Id.* ¶¶ 49, 51.

[6]   *Id.* ¶ 6, 46, 53–54.

concluded that, but for the *Hurtado* decision, Ortega Jimenez was eligible for release on a $5,000 bond pending future immigration court proceedings.[7] On October 14, Respondents started those removal proceedings.[8]

In this case, Ortega Jimenez challenges the fact of his detention, not any aspect of the removal proceedings against him.[9] He asserts that he faces significant hardship and serious deprivation of his fundamental right to be free from unlawful detention.[10] Specifically, Ortega Jimenez asserts that both his physical and mental health are suffering and that he has been prescribed medication because of the psychological toll his detention has taken on him.[11]

## II.   Jurisdiction

Before turning to the substance of Ortega Jimenez's claims, the Court addresses Respondents' argument that the Court lacks jurisdiction to hear this case.[12] In support of this contention, Respondents rely on 8 U.S.C. § 1252(g). Subject to certain inapplicable exceptions, § 1252(g) provides that

> no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence proceedings,*

---

[7]   *Id.*

[8]   ECF 21, at 3.

[9]   ECF 1, ¶ 14.

[10]  *Id.* ¶ 56.

[11]  *Id.* ¶ 58.

[12]  ECF 18, at 8–10.

3

>    *adjudicate cases, or execute removal orders* against any alien
>    under this chapter.

*Id.* (emphasis added).

Respondents assert that the decision to detain Ortega Jimenez was the necessary first step in commencing removal proceedings against him.[13] They argue that his petition directly challenges the legality of his detention and is thus barred by § 1252(g).[14] Ortega Jimenez counters that he is not challenging the decision to detain him in the first instance; he is instead attacking Respondents' assertion that he is subject to mandatory detention under § 1225 instead of discretionary detention under § 1226.[15] He argues that this case has no connection to any decision to commence a proceeding, adjudicate a case, or execute a removal order.[16] The Court agrees with Petitioner.

The Supreme Court has held that § 1252(g) applies only to the three discrete actions emphasized above—commencing proceedings, adjudicating cases, and executing removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S.

---

13   *Id.* at 8–10 (citing *Johnson v. Acting U.S. Att'y Gen.*, 847 F. App'x 801, 802 (11th Cir. 2021) (per curiam); *Alvarez v. United States Immigr. & Customs Enf't*, 818 F.3d 1194, 1204 (11th Cir. 2016); *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013)).

14   *Id.* at 9.

15   ECF 21, at 2–3.

16   *Id.*

471, 482 (1999) ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."). Ortega Jimenez's habeas petition involves none of these. In fact, he filed his petition before removal proceedings had even begun. This case instead involves the type of detention to which Ortega Jimenez is subject pending those proceedings—mandatory or discretionary. *See, e.g., Cogllo Chafla v. Scott*, 2025 WL 2688541, at *4 (D. Me. Sept. 22, 2025) (concluding that the court was not deprived of jurisdiction to hear challenges to the legality and constitutionality of the petitioners' detention by immigration authorities). The cases relied on by Respondents do not hold otherwise.

In *Gupta v. McGahey*, the plaintiff (Gupta) alleged that his constitutional rights were violated by ICE agents "when they arrested and detained him in connection with the initiation of removal proceedings against him." 709 F.3d 1062, 1063 (11th Cir. 2013) (per curiam). The Court of Appeals upheld the district court's determination that there was no jurisdiction because Gupta's claims arose from the decision to commence removal proceedings. *Id.* Unlike Ortega Jimenez's arguments here, Gupta asserted that his rights were violated because the ICE agents had wrongfully procured the warrant for his arrest, unlawfully arrested him, and conducted illegal searches as part of his arrest and detention. Those actions all stemmed directly from the decision to start removal proceedings

5

against Gupta and the accompanying issuance of a warrant for his arrest. *Id.* at 1065. The same was true in *Johnson v. Acting United States Attorney General*, in which the plaintiff alleged that ICE lacked probable cause to arrest and seize him such that the final order for his removal was unconstitutional. The Court of Appeals held that Johnson's claims were based on the commencement of removal proceedings, the detention order, and the removal order, thus falling squarely into § 1252(g)'s prohibitions. 847 F. App'x 801 (11th Cir. 2021) (per curiam). But Ortega Jimenez raises no such arguments here. His petition concerns only the type of detention to which he is subject—mandatory or discretionary—not whether Respondents have the right to detain him in the first place. *See, e.g., Hinojosa Garcia v. Noem*, 2025 WL 3041895, at *2 (M.D. Fla. Oct. 31, 2025) ("The factual and legal scenario presented in this case differs from *Gupta* and *Alverez*. [The petitioner] does not challenge the respondents' decision to commence removal proceedings against him, the decision to arrest and detain him, or the methods by which he is detained. Rather, [the petitioner] challenges the Attorney General's treatment of him as an 'alien seeking admission,' whose detention is governed by Section 1225(a)(2) rather than Section 1226(a). [The petitioner] asks the Court to answer a legal question—whether he is subject to mandatory detention under Section 1225(b)(2) or discretionary detention under Section 1226(a). He does not ask the Court to

second-guess the respondents' discretionary decision to commence removal proceedings against him.").

Respondents also rely on *Alvarez v. United States Immigration and Customs Enforcement*. There, Alvarez asserted that government officials had lied in order to unconstitutionally prolong his detention while knowing that the order to remove him to Cuba could not be executed. 818 F.3d 1194 (11th Cir. 2016). The Eleventh Circuit agreed with the district court's conclusion that Alvarez's challenges to the decisions (1) to require him to attend removal proceedings and (2) to take him into custody and detain him pending those proceedings both fell within § 1252(g)'s scope—holding that "both allegations challenge the propriety of ICE's decision to detain Alvarez prior to his removal hearing." *Id.* at 1203. The legal question here, whether Ortega Jimenez is entitled to bond pending removal proceedings, is separate from the decisions to detain him and to institute those proceedings. Accordingly, the Court concludes that it does have jurisdiction to consider this habeas petition.

## III.   Temporary Restraining Order

To obtain preliminary injunctive relief, Ortega Jimenez must demonstrate: (1) a substantial likelihood of success on the merits; (2) that he will suffer irreparable injury without the requested relief; (3) that the injury will outweigh whatever damage an injunction would cause Respondents; and (4) that the

7

injunction would not be adverse to the public interest. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). When the government is the non-movant—as here—the third and fourth elements merge. *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020) (per curiam) ("[W]here the government is the party opposing the preliminary injunction, its interest and harm merge with the public interest."); *see also Nken v. Holder*, 556 U.S. 418, 435 (2009) (addressing stays of removal pending judicial review; noting that the third and fourth factors "merge when the Government is the opposing party").

In determining whether a preliminary injunction is warranted, the Court "need not find that the evidence positively guarantees a final verdict" in the movant's favor. *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). That said, a "preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to the four requisites." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (cleaned up).

### A.   Likelihood of Success on the Merits

The parties agree that there is only one real issue in dispute about whether Ortega Jimenez is likely to succeed on his claims—the pure legal question of whether § 1225 requires his mandatory detention or if he is subject to discretionary

detention under § 1226.[17] The Court therefore begins with the text of the relevant provisions. *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) (citing *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004)) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute. It is well established that, when the statutory language is plain, we must enforce it according to its terms.").

### 1. Section 1226

Ortega Jimenez argues that § 1226(a) governs his detention because that section applies to people who are already in the country (in contrast to those attempting to enter) and are being held pending removal proceedings.[18] Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General may then continue to detain the alien or "may release the alien" on "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General." 8 U.S.C. § 1226(a)(1), (2)(A). The Supreme Court has described § 1226(a) as the "default rule," albeit in a different context. *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (addressing whether aliens detained under § 1225(b) must be given periodic

---

[17]  *See generally* ECFs 8, 18.

[18]  ECF 8-1, at 9–10 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 287, 289, 297 (2018)).

bond hearings). This default rule "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings . . . ." *Id.* at 289 (emphasis added); *see also id.* at 303 ("§ 1226 applies to aliens already present in the United States").

By its plain language, § 1226(a) is not limited to aliens who were lawfully admitted into the country. That is, nothing in the text of § 1226(a) prevents its application to those who, like Ortega Jimenez, were never lawfully admitted in the first place. Although there are exceptions in § 1226(c) to § 1226(a)'s broad scope, Respondents do not argue that they apply to Ortega Jimenez. And "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

### 2. Section 1225

Respondents contend that Ortega Jimenez's detention is mandatory per § 1225.[19] Section 1225(a)(1) provides: "An alien present in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission." Ortega Jimenez does not dispute that he entered the United States without inspection.[20] Under the plain language of § 1225(a) then, he

---

[19] *See generally* ECF 18, at 11–23.

[20] ECF 1, ¶ 51.

is an alien present in the United States who has not been admitted, *i.e.*, an applicant for admission[21] — something he does not appear to dispute. But that does not end the inquiry.

Subject to certain exceptions not relevant here, § 1225(b)(2)(A) states that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien ***seeking admission*** is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under" 8 U.S.C. § 1229a. (Emphasis added.) Respondents argue that this provision governs Ortega Jimenez's detention.[22] But Respondents' contention conflates the term "applicant for admission" with the term "seeking admission" in the same sentence. In doing so they rely on the BIA's definition of the phrase "seeking admission."[23] In *Matter of Lemus-Losa*, the BIA does indeed treat "applicant for admission" and "seeking admission" as meaning the same thing. 25 I&N Dec. 734, 743 (BIA 2012). Respondents therefore claim that "seeking admission" should be interpreted as "co-extensive with 'applicant for admission.'"[24] In the Court's view,

---

[21] ECF 8-1, at 16–17.

[22] ECF 18, at 11.

[23] *Id.* at 13.

[24] *Id.* at 17.

the BIA's interpretation of these terms ignores the plain language of § 1225(b)(2)(A) and violates basic canons of statutory construction.

There is no logical reason for Congress to have used two different terms to mean the exact same thing in the same sentence less than ten words apart: " . . . in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted . . . ." The term "seeking admission" is entirely unnecessary in this section unless it is means something *different* than "applicant for admission." *See, e.g.,* Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 170 (1st ed. 2012) ("[W]here the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea."); *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *6 (E.D. Mich. Sept. 9, 2025) ("The Court . . . finds it difficult to square a noncitizen's continued presence with the term 'seeking admission,' when that noncitizen never attempted to obtain lawful status. This is especially true in light of § 1225's statutory context.").

Respondents' position would require the mandatory detention of every alien not lawfully admitted to the country because anyone with that status is an "applicant for admission" under § 1225(a)(1). While this interpretation would not completely vitiate § 1226(a)'s discretionary bond provisions (since they could be

applied to lawfully admitted aliens who subsequently become deportable), it is inconsistent with the Supreme Court's characterization of § 1226 as the "default rule" applicable to aliens already in the country. *Jennings*, 583 U.S. at 288–89.

Moreover, if Respondents' interpretation of § 1225 were correct, recent amendments to § 1226(c) would not have been needed. Section 1226(c) was amended in January 2025 to require the Attorney General to "take into custody any alien who" is inadmissible and charged with certain crimes. 8 U.S.C. § 1226(c)(1)(E); Laken Riley Act, Pub. L. 119-1, 139 Stat 3 (Jan. 29, 2025). If inadmissible aliens present in the country are already subject to mandatory detention under § 1225(b)(2)(A), as Respondents assert, then the Laken Riley amendment is superfluous at best. *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239, 1257–58 (W.D. Wash. 2025) ("Section 1226(c)(1)(E)'s mandated detention for inadmissible noncitizens who are implicated in an enumerated crime, including those 'present in the United States without being admitted or paroled,' would be meaningless since 'all noncitizens who have not been admitted' would already be governed by 1225's mandatory detention authority.").

The most natural reading of § 1225(b)(2)(A) is that aliens "seeking admission" are a subset of those aliens who are "applicant[s] for admission." Such an interpretation is also consistent with the statutory canons of construction. Ortega Jimenez asserts that those "seeking admission" means those who are

13

entering the country and trying to obtain admission,[25] which he was not. *See, e.g., Choglio Chafla v. Scott*, 2025 WL 2688541, at *6 (D. Me. Sept. 22, 2025) (citing 8 C.F.R. § 1.2 (2025)) ("In the context of an 'applicant for admission,' the active language implies that the noncitizen is actively engaged in the exercise of being admitted to the United States, rather than currently residing here and seeking to stay. Such an interpretation comports with other immigration regulations, which define an '[a]rriving [noncitizen]' as 'an applicant for admission coming or attempting to come into the United States.'"). Indeed, the interpretation advocated by Ortega Jimenez was apparently applied by Respondents for decades—until recently. *Pizarro Reyes*, 2025 WL 2609425, at *7 ("Finally, the BIA's decision to pivot from three decades of consistent statutory interpretation and call for Pizarro Reyes' detention under § 1225(b)(2)(A) is at odds with every District Court that has been confronted with the same question of statutory interpretation."). Many courts have rejected the interpretation Respondents push here. *See, e.g., id.* at *7 (citing cases); *Choglio Chafla*, 2025 WL 2688541, at *5 (citing cases); *see also Rojano Gonzalez v. Sterling*, Civ. A. No. 1:25-cv-6080-MHC, ECF 18, Nov. 3, 2025 Order.

In short, the Court is not persuaded by Respondents' arguments that Ortega Jimenez is subject to mandatory detention under § 1225. He is instead subject to

---

25   ECF 8-1, at 14–15.

discretionary detention under § 1226. Ortega Jimenez is therefore likely to prevail on his claims that his rights are being violated by Respondents' refusal to release him on bond. Having satisfied the central element of the test for preliminary injunctive relief, the Court turns to Ortega Jimenez's arguments as to the remaining elements. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005) (citing *Gonzalez v. Reno*, 2000 WL 381901, at *1 (11th Cir. April 19, 2000)) ("The first of the four prerequisites to temporary injunctive relief is generally the most important.").

### B. Irreparable Injury

An unconstitutional detention is an irreparable injury. *See Case v. Hatch*, 2011 WL 13285731, at *4 (D.N.M. May 2, 2011) (citing *Poindexter v. Booker*, 2007 WL 2780556, at *3 (E.D. Mich. Sept. 20, 2007)) ("[T]he State does not have a defensible interest in the continued incarceration of someone whose conviction was obtained in violation of his constitutional right."). Respondents do not dispute that, if he is being improperly detained, Ortega Jimenez is suffering irreparable harm.[26] *See, e.g., Barker v. Wingo*, 407 U.S. 514, 532 (1972) ("The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness."); *Walker v. City of Calhoun*, 901 F.3d 1245, 1281

---

[26] ECF 18, at 24 ("The Government does not dispute that Petitioner's assertions of irreparable harm and violations of due process are necessarily intertwined with the legality of his detention.").

(11th Cir. 2018) (quoting *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987)) ("Jail time is an 'irreparable injury' because 'it cannot be undone through monetary remedies.'") (Martin, J., concurring in part). This factor plainly weighs in Ortega Jimenez's favor since he will continue to suffer this harm absent an injunction permitting his release on bond.

### C. Harm to Respondents/Public Interest

Ortega Jimenez also argues that the balance of equities and public interest weigh in his favor because the government cannot be injured by an order that enjoins an unlawful action.[27] *See, e.g., Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin.*, 16 F.4th 1130, 1143 (5th Cir. 2021) ("The public interest is in having governmental agencies abide by the federal laws that govern their existence and operations. And there is generally no public interest in the perpetuation of unlawful agency action.") (cleaned up). Respondents do not dispute this proposition.[28] They do, however, ask that the Court require Ortega Jimenez to pay a bond of at least $5,000 if it grants him injunctive relief.[29] An IJ has already concluded that $5,000 would be an appropriate bond to ensure Ortega

---

[27] ECF 8-1, at 20–21.

[28] ECF 18, at 24.

[29] *Id.*

16

Jimenez appears for future immigration court hearings if the court had jurisdiction.[30] This Court agrees.

## IV. Conclusion

The Court **GRANTS** Ortega Jimenez's Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction [ECF 8] to the extent he seeks an order directing Respondents to release him from detention upon his payment of a $5,000 bond. Respondents are **ORDERED** to release Ortega Jimenez immediately upon his posting of a $5,000 bond with ICE. Respondents are further **ORDERED** to facilitate the processing of Ortega Jimenez's bond so that he may be released as soon as practicable, notwithstanding ICE's limited operations during the current federal government lapse in appropriations.

To the extent Ortega Jimenez asks the Court to enjoin Respondents from transferring him outside of this District while his habeas action is pending, the motion is **DENIED as moot**. As noted previously, Respondents transferred Ortega Jimenez shortly after the petition was filed.[31] In light of this order that Ortega Jimenez be released upon posting bond, any issues about *where* he is detained are no longer live.

---

[30] ECF 1, ¶¶ 3, 6, 54, 70.

[31] ECF 18, at 3; ECF 21, at 15.

Finally, the stay imposed by Administrative Order 25-01 [ECF 12] is **LIFTED** for all purposes related to this action. Respondents are **ORDERED** to **SHOW CAUSE** within 60 days why the petition should not be granted. The Clerk is **DIRECTED** to resubmit this case to United States Magistrate Judge Lawrence R. Sommerfeld for further proceedings.

**SO ORDERED** this 6th day of November, 2025.

_____
Steven D. Grimberg
United States District Judge